<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRIAN GROUP, LIMITED PARTNERSHIP and NPM GROUP, INC., as successors in interest to CENTRAL RAILROAD COMPANY OF NEW JERSEY,<br><br>      Plaintiffs,<br><br>  v.<br><br>ACCIDENT AND CASUALTY INSURANCE COMPANY OF WINTERTHUR, *et al.*,<br><br>      Defendants. | Civ. No. 98-1026 (GEB)<br><br>**OPINION** |

<u>**BROWN, Chief Judge**</u>

  This matter comes before the Court upon: (1) defendant Continental Insurance Company's ("Continental" or "Defendant") motion to enforce a settlement agreement; and (2) plaintiffs Trian Group, Limited Partnership ("Trian") and NPM Group, Inc.'s ("NPM") (collectively "Plaintiffs") cross-motion to enforce the same. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Court, having considered the parties' submissions, and for the reasons set forth below, will deny Defendant's motion and grant Plaintiffs' cross-motion.

**I. BACKGROUND**

  Plaintiffs are successors-in-interest to Central Railroad Company of New Jersey ("CNJ"). (Stewart Cert. ¶1.) Plaintiffs claim that, in that capacity, they were sued by numerous railroad workers for various injuries allegedly caused by CNJ's railroad operations. (Pls.' Br. at 4.) As a result of those lawsuits, Plaintiffs claim that they have incurred certain settlement and defense litigation costs. (*Id.*) In March 1998, Plaintiffs brought this lawsuit against a number of insurance companies to recover those losses. (Stewart Cert. ¶2.) The defendants included

1

Continental, which was sued as the successor-in-interest to certain insurance policies that Harbor Insurance Company ("Harbor") had sold to CNJ. (*Id.* ¶3.) Plaintiffs asserted claims of breach of contract and breach of fiduciary duty against the insurance companies. Trial was scheduled to begin on December 6, 2005. By that time, Plaintiffs had settled with all of the defendants except for Continental. (*Id.*)

Prior to the scheduled trial, Plaintiffs and Continental notified the Court that they had reached a settlement agreement ("Settlement Agreement" or "Agreement"). On that basis, the Court dismissed the action on December 6, 2005. The December 6 Order provided "that this action is hereby dismissed, without costs and without prejudice to the right, upon good cause shown within SIXTY (60) days, to reopen the action if the settlement is not consummated . . . ." (December 6 Order.) It further provided that "[i]f any party shall move to set aside this Order of Dismissal as provided in the first decretal paragraph or pursuant to the provisions of Fed. R. Civ. P. 60(b), in deciding such motion the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties." (*Id.*)

In the weeks that followed, the parties negotiated the written terms that would reflect their Agreement. The parties proposed language that differed in significant respects, and during the course of the negotiations, they were unable to agree on mutually acceptable language. On February 21, 2006, Defendant filed its motion to enforce the Settlement Agreement. On March 7, 2006, Plaintiffs filed their cross-motion to enforce the same. The parties dispute the terms of the Settlement Agreement and request that the Court enforce the Agreement according to their respective interpretations.

II. **DISCUSSION**

    A. **Whether the Court Has Jurisdiction to Decide the Instant Motions**

Defendant argues that the Court has jurisdiction to enforce the terms of the Settlement

Agreement pursuant to the December 6 Order and Federal Rules of Civil Procedure Rule 60(b). According to Defendant, the Court retained jurisdiction to enforce the terms of the Agreement in its December 6 Order for a period of sixty days, and that pursuant to Rule 60(b), the Court should set aside the sixty-day provision and enforce the terms of the Agreement despite the expiration of the sixty days.

> **1.     Whether the Court Expressly Retained Jurisdiction to Enforce the Settlement Agreement**

When a district court dismisses a case because the parties have settled, the court does not have jurisdiction to enforce the terms of the settlement agreement simply because it had jurisdiction to decide the underlying action.  *See Kokkoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("[e]nforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction"); *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 503 (3d Cir. 2002) ("reinstatement of an action, which revives the underlying claim and sends the litigants back to the original battlefield, is totally different from the enforcement of the terms of a settlement agreement because one of the parties has not complied with those terms").

In order to have jurisdiction to enforce a settlement agreement, the district court must have either:  (1) an independent basis for federal jurisdiction; (2) embodied the settlement contract in its dismissal order; or (3) expressly retained jurisdiction to enforce the agreement. *See Kokkoken*, 511 U.S. at 381-82.  "[M]ere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order."  *Shaffer*, 284 F.3d at 503 (quoting *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) (citations omitted)).

Here, the December 6 Order provided that "[i]f any party shall move to set aside this Order of Dismissal . . . , in deciding such motion *the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement* entered into between the parties." (*Id.* (emphasis added).)  The Court therefore retained jurisdiction to enforce the

Agreement if the parties moved to reinstate the action within sixty days of the December 6 Order.

### 2. Whether the Court Should Set Aside the Sixty-Day Portion of the December 6 Order

The parties were allowed to seek reinstatement of the action within sixty days of the December 6 Order. Defendant, however, did not file its motion to enforce the Agreement until February 21, 2006, or after the sixty-day period expired. It now seeks to set aside the December 6 Order – and the sixty-day limit in particular – pursuant to Rule 60(b).

Rule 60(b) provides that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." The parties agree that they have settled the case, and that after the Court's dismissal of this action, they continued good-faith negotiations concerning the language reflecting the Agreement. Those discussions extended beyond sixty days, after which point the parties continued to disagree about the appropriate settlement language. In light of the parties' good-faith negotiations, the Court finds that the parties' failure to file their respective motions within the sixty day period constituted "excusable neglect."

### B. Whether the Settlement Agreement Included "Anticipated" Claims
#### 1. The Governing Law Concerning Enforcement of Settlement Agreements

"State law governs the construction and enforcement of settlement agreements in federal court." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996). Under New Jersey state law, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into[,] and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (internal quotations omitted).

According to the court in *Pascarella*, "[t]hat the agreement to settle was orally made is of no consequence, and the failure to do no more than . . . inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition." *Id.* at 124. "Adoption of a principle that such agreements are subject to attack because they were not placed upon the record places in unnecessary jeopardy the very concept of settlement and the process by which settlement of litigation is ordinarily achieved." *Id.* "[S]o long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing." *Excelsior Ins. Co.*, 975 F. Supp. at 349 (citing *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993); *Hagrish v. Olson*, 254 N.J. Super. 133, 138 (App. Div. 1992)). *See also Williams v. Vito*, 365 N.J. Super. 225, 232 (Law Div. 2003) ("'The manifestation of assent may be made wholly or partly by . . . spoken words . . .' [and] [t]he existence of an enforceable contract is not negated by the fact that subsequent writings are contemplated") (citations omitted). Moreover, the Third Circuit Court of Appeals has made clear that "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970). *See also Good v. Pa. R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) ("[t]he settlement agreement which was entered into by duly authorized counsel expressed the intention to settle the case for the agreed amount and was valid and binding despite the absence of any writing or formality").

### 2. The Parties' Different Interpretations of the Agreement

The parties do not dispute that a settlement agreement is enforceable even in the absence of a formal writing as long as there is agreement as to the essential terms. What they dispute are the terms to which they agreed. Defendant argues that the Settlement Agreement included the release of "any actual or potential claim . . . *known or anticipated by* [Plaintiffs] as of the

effective date of this AGREEMENT AND RELEASE . . . ." (Def. Br. Ex. A (Def.'s Proposed Agreement) (emphasis added).) Plaintiffs, in contrast, argue that the Agreement released Defendant of "any actual or potential claim . . . that is known by [Plaintiffs]" but not "anticipated" claims. (Stewart Cert. Ex. F (Pls.' Revisions to Def.'s Proposed Agreement).)

The record shows that the parties agreed to a release of known claims against Defendant, not both known and anticipated claims. Defendant admits that "settlement [was] entered into by the parties on December 2, 2005" and that "[t]he parties advised the Court of the settlement by telephone on December 2, 2005." (Def.'s Br. at 2, 4.) On that date, Plaintiffs sent an email to Defendant summarizing their understanding of the essential terms of the Agreement. Plaintiffs' December 2 email stated that "[t]he framework of the settlement is [the agreed-upon] payment, in exchange for a release of all known claims . . . ." (Stewart Cert. Ex. A.) Defendant responded with an email that same day which stated that "[t]his is correct with the understanding that Plaintiffs are releasing any and all claims . . . that are *presently known to Plaintiffs*." (*Id.* Ex. B (emphasis added).) As of December 2, 2005, then, the parties agreed to settle the case with respect to known claims only.

In arguing that the Agreement extended also to "anticipated" claims, Defendant makes two main arguments. First, Defendant claims that during conversations on January 25 and February 3, 2006, and in an email dated February 3, 2006, Plaintiffs' counsel explicitly agreed to further extend the release to include "anticipated" claims. (Brown Cert. ¶¶42-43, Ex. V.) Second, Defendant points to several of Plaintiffs' responses to Defendant's proposed language, which responses did not challenge the inclusion of "anticipated" claims in Defendant's proposals. (*See id.* Exs. H, J, L, N.) Defendant suggests that Plaintiffs thereby implicitly accepted the inclusion of "anticipated" claims.

These arguments are not persuasive because they do not change the fact that, as of December 2, 2005, the parties agreed to the essential terms of the Settlement Agreement, and that at the time, they understood the Agreement to cover "claims . . . that are presently known to

Plaintiffs." (Stewart Cert. Ex. B.) Since then, Plaintiffs have insisted on adhering to that limitation, and Defendant has not provided any written evidence to the contrary.

Defendant claims that Plaintiffs' counsel explicitly agreed to the inclusion of "anticipated" claims during conversations on January 25 and February 3, 2006, and in an email dated February 3, 2006. But the written record shows that Plaintiffs consistently interpreted the Agreement to cover known claims only. On December 2, 2005, the parties expressed an understanding that the Agreement extended to "claims . . . that are presently known to Plaintiffs." (Stewart Cert. Ex. B.) On the same date, Plaintiffs proposed language that would release Defendant of "[a]ll known claims . . . based upon and/or arising out of any person's actual or alleged injury . . . caused . . . by exposure to alleged hazardous substances [or conditions], in connection with . . . employment by the [CNJ]" and "all claims . . . based upon and/or arising out of . . . [certain applicable federal and state laws] . . . which are known to [Plaintiffs] . . . ." (*Id.* Ex. C.) On January 19, 2006, Plaintiffs revised Defendant's proposed language to strike the term "anticipated" claims. (*Id.* Ex. F.) On February 6, 2006, Plaintiffs again expressed in writing that they believed that the Agreement extended to known claims only. (Brown Cert. Ex. X.)

The only written evidence suggesting that Plaintiffs considered further extending the release to include "anticipated" claims is Plaintiffs' response to an email sent by Defendant. On February 3, 2006, Defendant sent an email to Plaintiffs stating that "we believe that we have worked out the remaining disputed issues" and that "[t]he definition of 'KNOWN CLAIM' will read as drafted in our proposed version of the settlement agreement sent to you in late December 2005 . . . ." (Def.'s Br. Ex. C.) The referenced portion of Defendant's proposed agreement, sent on December 20, 2005, defined "known claim" as "any actual or potential claim . . . known or anticipated by [Plaintiffs] . . . ." (*Id.* Ex. A.)

Plaintiffs' counsel responded to the email on the same day and stated:

> I think I know what you mean by 'anticipated' as used in the KNOWN CLAIM clause and I do not have a problem with its inclusion under my narrow interpretation of the word. But as the client struck it and has not signed off on the reinsertion of "known or anticipated," I need you to let me know, specifically,

7

>what "anticipated" means in your version so I can pass it along and confirm that you read the clause like I do.

(Brown Cert. Ex. V.) The email makes two things clear: (1) that Plaintiffs "ha[d] not signed off" on extending the release to "anticipated" claims; and (2) that their counsel insisted on clarification of the word "anticipated" before he would agree to include it in the written Agreement. The subsequent record, however, shows that Plaintiffs and their counsel ultimately decided not to use that language, and instead continued to insist on language reflecting the terms of the original Agreement, namely, to release Defendant of known claims only. At most, this evidence shows that Plaintiffs' counsel engaged in good-faith efforts to accommodate Defendant's expansive (and inaccurate) interpretation of their December 2 Agreement.

Defendant's other argument – that Plaintiffs accepted the inclusion of "anticipated" claims by implication – is also unpersuasive. After the parties entered the Settlement Agreement, they exchanged numerous emails, in piecemeal fashion, to discuss the details of its written form. Those subsequent discussions, however, did not change the essential terms of the Agreement. Defendant is correct that, in their correspondence dated December 29 and 30, 2005, and January 6, 2006, Plaintiffs did not challenge the inclusion of "anticipated" claims in Defendant's proposed language, and instead addressed other aspects of its proposal. (Brown Cert. Exs. H, J, L, N.) Plaintiffs did, however, object to Defendant's inclusion of the term "anticipated" claims in an email dated January 19, 2006. (*Id.* Ex. Q.) More importantly, Defendant knew that as early as December 2, 2005, Plaintiffs understood the Settlement Agreement to extend only to "all known claims . . . ." (Stewart Cert. Ex. A.)

Defendant has offered no written evidence showing that, at any point during the parties' negotiations, Plaintiffs agreed to release Defendant of anything more than "claims . . . that are presently known to Plaintiffs." (*Id.* Ex. B.) Defendant admits that "[t]he e-mail exchange between counsel on December 2, 2005 clearly reflects that, on that date, the parties had an agreement-in-principle that was subject to the negotiation of a settlement agreement setting forth the precise terms and conditions of this settlement." (Def.'s Opp. Br. at 5.) That agreement-in-

principle included among its essential terms Defendant's release from claims known to Plaintiffs. "Where a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement." *U.S. v. Lightman*, 988 F. Supp. 448, 463 (D.N.J. 1997) (citing *Pascarella*, 190 N.J. Super. 118).  The parties agreed to the release of Defendant for "claims . . . that are presently known to Plaintiffs[,]" and it is that Agreement that the Court will enforce.  (Stewart Cert. Ex. B.)

### III.  CONCLUSION

For the above reasons, Defendant's motion to enforce the Settlement Agreement is denied, and Plaintiffs' cross-motion to enforce the Agreement is granted.  An appropriate form of order is filed herewith.

Dated:  June 26, 2006

                                                         s/ Garrett E. Brown, Jr.
                                           GARRETT E. BROWN, JR., U.S.D.J.